## WATERFORD ELECTRIC LIGHT, HEAT & POWER CO. v. REED et al.

(Supreme Court, Special Term, Columbia County.   June, 1905.)

1. CONDEMNATION—RIPARIAN RIGHTS.

Where plaintiff by a condemnation proceeding acquires not merely the right of flowage of water against the defendant's land, but the absolute title to the entire river frontage, the riparian right which is thereby extinguished is property, independently of any intrinsic value in the condemned land.

2. SAME—SETTING ASIDE REPORT.

Under Code Civ. Proc. § 3371, authorizing the court in condemnation proceedings to set aside the commissioners' report for error of law in the proceedings, where questions to witnesses were intended to convey the idea that plaintiff would acquire only a right of flowage in the premises from the construction of a dam, and they were under a misapprehension in giving their testimony, such questions justify the setting aside of the report.

3. SAME—CONVEYANCE—INTEREST IN DAMAGES.

Under Code Civ. Proc. § 3381, authorizing the filing of notice of the pendency of condemnation proceedings, and making the proceedings binding on subsequent grantees, where the premises were conveyed after notice, the defendants presumably sustained a loss in diminution of the purchase price, and were entitled to the damages.

4. SAME—INSUFFICIENT AWARDS.

Under Code Civ. Proc. § 3371, authorizing the setting aside of the commissioners' report in a condemnation proceeding for error of law in the

proceedings before the commissioners, or because the award is excessive or insufficient, where the commissioners proceeded on the erroneous theories that plaintiff was only acquiring the right of flowage, and that defendants, by the execution of a deed, had lost all but a nominal interest in the question of damages, resulting in an insufficient award, the report must be set aside.

Condemnation proceedings by the Waterford Electric Light, Heat & Power Company against Kate E. Reed and others. Motion by plaintiff to confirm the report of the commissioners denied, and the report set aside.

See 92 N. Y. Supp. 960.

Thomas O'Connor, for plaintiff.

Holmes, Bryan & Holmes, for defendants.

COCHRANE, J. For the purpose of generating electricity for lighting the village of Waterford, the plaintiff desires to construct a dam across the Hudson river from a point on the easterly side thereof in the town of Schaghticoke, Rensselaer county, to a point on the westerly side thereof in the town of Halfmoon, Saratoga county, and to acquire certain lands and rights and privileges adjoining the river on both sides thereof. It is for this purpose that the plaintiff seeks by this proceeding certain lands of the defendants.

The defendants are the owners of a farm of about 75 acres in the said town of Schaghticoke, adjoining the Hudson river on the easterly side thereof. Parallel with the river extends a public highway. The center of the highway through the farm in question is at an average distance of 60 feet from the low-water mark of the river, and the average distance to high-water mark is about 10 feet less. The shore line of the farm along the river is 1,742 feet. From the highway to the river the bank slopes, and consists of earth with rock underneath. It is not tillable. The farmhouse and buildings of defendants are on the easterly side of the highway, the house being about 125 feet from the river. There is running water on the northerly part of the farm, but at a considerably greater distance from the buildings than is the river.

By the judgment entered herein the plaintiff has condemned for its uses and purposes the absolute fee of all of that portion of the defendants' farm between the center of the highway and the river. As the result of this proceeding, the plaintiff will acquire not merely the right of flowage of the water of the river upon and against the land in question by reason of such water being set back by the construction of the dam aforesaid, but the plaintiff will acquire absolute title to the entire river frontage of the defendants' farm west of the center of the highway, thereby cutting off all access to the river and to the use of the water thereof for domestic or farm purposes, and converting said farm from riverside to roadside property. This riparian right which is thus by this proceeding not merely interfered with, but which is absolutely extinguished, is property, independently of any intrinsic value in the condemned land itself, and is valuable in connection with the defendants'

farm.   And this is true even if it be assumed that the river at this point is a navigable stream.   Rumsey v. New York & New England Railroad Company, 133 N. Y. 79, 30 N. E. 654, 15 L. R. A. 618, 28 Am. St. Rep. 600.   For the destruction of this riparian right in the defendants, and the consequent impairment in the value of their farm, the commissioners have awarded the defendants the sum of $100.   No argument is needed to demonstrate the insufficiency of this award.

Mindful of the high character and standing of the commissioners, I have looked carefully into the evidence taken by them and proceedings had before them, and an examination of such evidence and proceedings convinces me that they were under a misapprehension as to the effect of this proceeding on the farm in question, and that they have inadvertently adopted an erroneous principle in assessing the damages, and that for such misapprehension and inadvertence the learned counsel for the plaintiff is, in part at least, responsible.   Counsel for the plaintiff insisted before the commissioners, as he also insists on this motion, that the defendants will not be deprived of the fee of the land in question, nor of the right of access to the river or the water thereof.   This is clearly an error, as above shown.   There is no suggestion anywhere in the record preceding the judgment and culminating therein of any interest or right in the defendants' property west of the highway less than an absolute fee which is to be acquired herein; but, on the contrary, such record and judgment clearly indicate the extinguishment of the defendants' entire rights in such lands, without any reservations or qualifications.

The estimates of depreciation to the defendants' farm varied greatly, ranging from about $4,000, according to the defendants' witnesses, down to nothing, according to the plaintiff's witnesses. As was said in Matter of The New York, Lackawanna & Western Railway Company, 27 Hun, 151:

"This disagreement throws discredit on the value of such testimony.   It is difficult to understand how witnesses who had any knowledge on the subject and who were competent to give opinions could vary so widely.   It would be wrong for us to assume that any of these witnesses did not testify honestly. And it seems, therefore, necessary, in order to account for this very great discrepancy, to inquire whether there was not some element improperly brought into the estimate; some element which diverted the minds of the witnesses from the mere question, 'What is the fair marketable value of the whole property, and then what will be the fair marketable value of the property not taken?'   Troy & Boston R. R. v. Lee, 13 Barb. 169; Black River & M. R. R. Co. v. Barnard, 9 Hun, 104."

Very likely the estimates of depreciation by the defendants' witnesses were much too high, but that an erroneous method was pursued by the plaintiff on the question of damages is apparent from the questions asked of its witnesses.   Such questions were like this:

"Assuming that the plaintiff takes all the land lying between the center of the highway and the Hudson river for its uses and purposes, what would the remaining portion of the land be worth?"

This question was intended to convey to the witnesses the idea, that the plaintiff would acquire only the right of flowage in the premises in question; and that the witnesses possessed such idea, and were under a misapprehension in giving their testimony, is very apparent from their cross-examination. Such questions constitute "error of law in the proceedings before the commissioners" which justify setting aside their report. Code Civ. Proc. § 3371; Matter of The New York, Lackawanna & Western Railway Company, supra. In the latter case it was said, at page 154:

"The true inquiry (as only a part of the defendant's land was taken) is that above pointed out: What is the fair marketable value of the whole? What is the fair marketable value of the property not taken? If the questions had been limited with some strictness to those points, there would not perhaps have been the extraordinary variance of estimates."

These erroneous questions were pressed, against the defendants' objections, and on the cross-examination of the witnesses, conducted with a view to showing that their minds had been diverted by an improper element embodied in the questions, counsel for plaintiff asserted, as he did on other occasions, that only the right to flow the land was taken or could be acquired. This was an erroneous theory.

The learned counsel for the plaintiff further insisted before the commissioners, as he also insists on this motion, that the defendants had no longer any interest in the proceeding. This contention was based on the fact that, pending the proceeding, the defendants conveyed their interest to the strip of land in question, reserving only their right to go upon and to cross the same for certain purposes specified in the conveyance. And the plaintiff argued from this fact that the defendants were no longer interested in the question of damages. This contention was also untenable. Notice of pendency of the proceeding was filed, and the grantee in such conveyance is bound by this proceeding. Code Civ. Proc. § 3381. Presumably, when such grantee took title, he did so with reference to the quality of the estate in the premises in question which would be acquired by the plaintiff in this proceeding then pending, and the defendants sustained a corresponding loss in the diminution in the purchase price of such premises. The liability of the plaintiff is to the defendants, and not to their grantee.

Doubtless, in a proceeding of this kind, the commissioners may act on their own judgment, disregarding oral testimony. Much latitude also is allowed them in the taking of testimony, the rules of evidence which obtain on the trial of an action not being applied in all their strictness. Awards will ordinarily be sustained, unless the commissioners have clearly gone astray or adopted erroneous principles. But the record here shows that the learned counsel for the plaintiff maintained two erroneous theories before the commissioners, viz., that the plaintiff was only acquiring the right of flowage in respect to the property in question, and that the defendants, by reason of the execution of a deed, had lost all but a nominal interest in the question of damages. I am satisfied that the commissioners adopted one or both of such erroneous theories,

and, if they did so, they necessarily applied a wrong principle in making their award, and by reason thereof the award is insufficient. When such is the case, it is the duty of the court to set aside the report.   Section 3371, Code Civ. Proc.

Report of commissioners set aside; new commissioners may be appointed.